**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Jaclyn C.[1],     *Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Comm'r of Soc. Sec.,[2]     *Defendant*. | )<br>)<br>)   3:24-CV-1648 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER REVERSING DECISION OF THE COMMISSIONER

This matter is before the court upon Plaintiff's Motion to Reverse the Decision of the Commissioner[3] and its supporting memorandum ("Motion to Reverse"), *see* ECF Nos. 17 and 17-1, as well as Defendant's responsive Motion to Affirm the Decision of the Commissioner and its supporting memorandum ("Motion to Affirm"), *see* ECF Nos. 22 and 22-1 (together with the Motion to Reverse, "Motions"). The court has reviewed the Motions, the administrative record, *see* ECF No. 15, and the record in this matter and is thoroughly apprised in the premises. For the reasons discussed herein, the court **REMANDS** this matter for further review of the Administrative Law Judge ("ALJ").

---

[1] Pursuant to this district's standing order (issued January 8, 2021) regarding social security cases (available at: https://www.ctd.uscourts.gov/sites/default/files/adminOrdersOCR/21-1_Standing%20Order%20Re%20Social%20Security%20Cases_6.pdf) (last visited May 31, 2026), the court will identify Plaintiff as such (or by first name and last initial), "[t]o protect the privacy interests of social security litigants while maintaining public access to judicial records". *Melissa C. v. Kijakazi*, 2023 WL 154893 (RMS), at *19 (D. Conn. Jan. 11, 2023).

[2] The case caption in this action lists Andrew Saul as the defendant, but the court takes judicial notice of the fact that Frank Bisignano is the current Commissioner of Social Security.

[3] All references to the "Commissioner" in this order shall refer to the Commissioner of Social Security.

I.   **<u>LEGAL PRINCIPALS</u>**

The Commissioner employs a five-step analysis when determining whether an individual is entitled to disability insurance pursuant to the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At step one, the Commissioner evaluates whether the applicant is engaged in "substantial gainful activity," and if they are so engaged, the application is denied.  *Id.*  If they are not so engaged, then the Commissioner proceeds to step two and determines whether the applicant has a medically severe impairment or combination of impairments.  *Id.* at 140–41.  Without such impairment(s), the application is denied.  *Id.*  If the applicant's impairment is severe, then the Commissioner proceeds to the third step, at which the Commissioner consults a list of impairments that are presumptively disabling (the "Listings"), and if the applicant's impairment matches a condition on that list, their application is granted.  *Id.*  If the applicant's impairment is not in the Listings, then the analysis proceeds to the fourth step, at which the Commissioner determines whether the applicant's impairment or combination of impairments prevents them from performing work they have performed in the past.  If not, then the application is denied.  *Id.*  If so, the Commissioner proceeds to the fifth and final step and determines whether there is any other work available in the national economy that the applicant could perform, given their impairment, age, education, and work experience.  *Id.* at 142.  If so, then the application is denied, and if not, then the application is granted.  *Id.*

District courts may set aside a disability determination only if it is "based upon legal error or is not supported by substantial evidence."  *Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)).  "Substantial evidence" means more than a scintilla of

evidence, but it is a very deferential standard of review.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).  The standard is satisfied by "such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.;* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)) (emphasis in original); *see also Johnson v. Berryhill*, No. 3:17-CV-1651 (VAB), 2019 WL 1430242, at *5 (D. Conn. Mar. 29, 2019).  In reviewing a disability determination, courts must examine the entire administrative record and "consider the evidence which fairly detracts from the administrative finding as well as that which supports it."  *Covo v. Gardner*, 314 F. Supp. 894, 899 (S.D.N.Y. 1970); *see also Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir. 1999) ("To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.").

If the court finds that the Commissioner has applied an incorrect legal standard, or if there are significant gaps in the administrative record, the court may remand for further review by the Commissioner. *See Lepak ex rel. Lepak v. Barnhart*, 206 F. Supp. 2d 389, 392 (W.D.N.Y. 2002) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).  But if the record contains persuasive proof of disability, the court may reverse the Commissioner's decision and remand only for the calculation and payment of benefits.  *Id.* Otherwise, the stringent burden, which is "even more [deferential] than the 'clearly erroneous' standard [of review]" demands that the Commissioner's decision be affirmed.  *See Brault*, 683 F.3d at 448 (quoting *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

## II.    BACKGROUND

In August 2021, Plaintiff, then a 31-year-old woman, applied for disability insurance pursuant to the Social Security Act, asserting that she had been disabled since June 22, 2020.  ECF No. 15-1 at 19.[4]  In her application, she asserted that she could not work due to several mental health ailments including depression, anxiety, and post-traumatic stress disorder ("PTSD"), and gastroparesis, a digestive disorder.  *Id.*  Her application initially was denied in December 2021.  *Id.* at 78.  Plaintiff sought reconsideration, which again led to a determination that she was not disabled.  *Id.* at 86.  Thereafter, she requested a hearing in front of an ALJ, *id.* at 135, which was held on May 15, 2023, *id.* at 19.  On January 2, 2024, the ALJ issued a written decision.  *Id.* at 19.

Favorable to Plaintiff's application, the ALJ found that Plaintiff was not engaged in "substantial gainful activity" at step one, that she has several medically severe impairments at step two (specifically, digestive disorder/gastritis, spine disorder, major depressive disorder, generalized anxiety disorder, and PTSD), and, at step four review, that she could not return to her previous work in retail.  *Id.* at 21–27.

However, the ALJ also determined at step three that Plaintiff's impairments were not presumptively disabling under the Listings, and, at step five, that there was other work in the national economy that Plaintiff still could perform.  *Id.* at 22–23, 28–29.  Accordingly, Plaintiff's application was denied.  *Id.* at 30.  The Appeals Council denied Plaintiff's subsequent request for review.  *Id.* at 1.  As such, she now appeals this denial of benefits, asking the court to reverse the ALJ's decision or, in the alternative, to remand this matter for further review.

---

[4] Citations to the administrative record will refer to the record pagination (Social Security Transcripts), and not the pagination assigned by the electronic case filing system (CM/ECF).

4

### III.    <u>DISCUSSION</u>

Plaintiff argues that the ALJ committed legal error at step three by failing to find that she satisfied the requirements of Listing 5.08 insofar as she suffered weight loss due to her digestive disorders, despite treatment of the same, such that her body mass index was below 17.50 on two separate occasions at least 60 days, but no more than six months, apart.  She also argues that the ALJ made several findings of fact at step five that are not supported by substantial evidence, such that the determination of her Residual Functional Capacity ("RFC")[5] was faulty.  Finally, she claims that had her RFC been properly determined, the ALJ would have found that there is no job in the national economy that Plaintiff can perform.

Defendant responds that the ALJ's determination at step three was appropriate, since Plaintiff's argument relies upon self-reporting.  And with respect to Plaintiff's RFC, Defendant responds that the ALJ properly considered all relevant evidence and that substantial evidence supports the ALJ's conclusions.

### A.  <u>Listing 5.08</u>

The ALJ found that the record failed to demonstrate the requisite evidence to show that Plaintiff is per se disabled under Listing 5.08.  It is undisputed that on March 11, 2022, Plaintiff was seen for a consultation regarding her digestive ailments.  She was weighed during that appointment and her BMI was calculated to be 17.01.  Plaintiff also points to a January 5, 2022, telehealth appointment during which she reported her weight to be 93

---

[5] The RFC is a multi-factor designation used in disability proceedings that indicates what capabilities and limitations a particular individual has.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010).  The RFC is used to determine what, if any, jobs in the national economy an applicant could perform. *Id.*

pounds, yielding a BMI of 17.0.  She asserts that these two evaluations satisfy Listing 5.08.

Defendant disagrees, contending that satisfaction of a Listing must be established by medical evidence, not a self-report.  But the court is not persuaded by the authority Defendant cites in support of that proposition.  Under the relevant regulations, medical evidence is required to establish that a claimant has a digestive disorder.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("To establish that you have a digestive disorder, we need medical evidence about the existence of your digestive disorder and its severity.").  This can include a claimant's medical history, examinations, and testing results.  But in a separate section, the regulations state only that BMI is derived from the "measurements of [the claimant's] weight and height without shoes . . . ."  20 C.F.R. § Pt. 404, Subpt. P, App. 1. It is not apparent to the court that a claimant who otherwise has established a digestive disorder through medical testing (as Plaintiff has done here) cannot supply a doctor with her own weight, particularly during the era of the COVID-19 pandemic, when many healthcare organizations were minimizing in-person care, and consequently, when many appointments occurred via remote means.

Moreover, though, the evidence Plaintiff cites is a doctor's note from a medical record.  It is not clear whether this qualifies as "other medical evidence" within the meaning of the regulations, which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513.

Of course, the ALJ is responsible for assessing the credibility of all the evidence. "When, however, an ALJ chooses to reject a claimant's self-report, he or she must state as much on the record and specify the reasons for doing so." *Kraemer v. Apfel*, No. 97 CIV. 8638 (AGS), 1999 WL 14684, at *3 (S.D.N.Y. Jan. 14, 1999), *on reconsideration*, No. 97 CIV. 8639 (AGS), 1999 WL 66524 (S.D.N.Y. Feb. 10, 1999).   There is no explanation in the record as to why the ALJ chose not to credit Plaintiff's report of her weight, particularly when that self-reported data was recorded by her doctor, presumably upon acceptance of its veracity.  Remand is required for this reason.

### B. <u>Residual Functional Capacity</u>

Plaintiff also asserts that the ALJ's determination regarding Plaintiff's RFC was not based on substantial evidence.  She argues that: (1) the ALJ improperly relied upon the testimony of the vocational expert; (2) the ALJ failed to address Plaintiff's bilateral shoulder impingement; (3) the ALJ failed to address Plaintiff's gastroparesis; (4) the ALJ failed to secure statements from Plaintiff's mental healthcare providers; and (5) the ALJ's determinations as to Plaintiff's mental impairments were not based on any competent medical evidence.  The court will address each assertion seriatim.

#### 1. *<u>The Vocational Expert</u>*

Plaintiff's reproof with the vocational expert arises from certain testimony the expert gave at her hearing as to whether occupations exist within the national economy that Plaintiff could perform.  Plaintiff asserts that the expert grossly misrepresented the number of positions in the national economy for some of those occupations.  At the hearing, Plaintiff's counsel pointed out the discrepancy between the expert's representations and the information counsel was seeing in real time.  The ALJ asked the

expert to explain the discrepancy, but she could not.  In the end, the ALJ did not rely upon those positions in His Honor's ruling, but Plaintiff contends that the error was so egregious as to undermine the expert's credibility entirely.

The court does not come to the same conclusion.  It appears that the expert made an error in retrieving information from the software programs generally used to show the number of positions within a particular job existing in the national economy.  But the ALJ did not rely upon those errors in the final findings of fact, and so there was no harm caused by the misrepresentations.  Absent additional evidence of some neglect or malfeasance, the court cannot conclude that there was reason to disregard the expert's testimony altogether.  Therefore, the ALJ's reliance upon the balance of the expert's testimony is no reason for reversal.

### 2.  *Bilateral Shoulder Impingement and Gastroparesis*

Plaintiff argues that the ALJ did not account for her shoulder injuries and gastrointestinal ailments in arriving at her RFC.  With respect to the former, the court disagrees.  The ALJ discussed in his findings of fact that Plaintiff continues to have neck and shoulder pain after an injury to her shoulders on the job several years ago.  The ALJ further noted that Plaintiff indeed has a reduced range of motion in her shoulders, and he cited an electromyographic study that returned abnormal results for Plaintiff's left shoulder and elbow (essentially showing that her left upper extremity was slow to respond to stimulation of her nerves).  Apparently in acknowledgement of this medical evidence, the ALJ limited Plaintiff's RFC so that she could only occasionally reach overhead bilaterally. This limitation is consistent with Plaintiff's medical record, and with her own testimony at the hearing, where she stated that she cannot bring her arms straight up, and that she

would be unable to reach her arms in any direction repeatedly.  ECF No. 15-1 at 54–55.

Accordingly, the court finds that the ALJ did account for Plaintiff's bilateral shoulder

impingement and that his conclusions as to the same were supported by substantial

evidence.

As to the gastroparesis, though, the court agrees with Plaintiff.  The ALJ accurately

recounted the myriad chronic gastrointestinal symptoms Plaintiff reports experiencing:

abdominal pain, nausea, vomiting, diarrhea, weight loss, acid reflux, diminished appetite,

frequent need for a bathroom, and extended periods in the bathroom.  The ALJ dismissed

these symptoms somewhat summarily, however, noting that they were resolved or much

improved with medication.  Though the ALJ did cite to the record to support that finding,

the court finds that fulsome review of the entire record shows that any diminishment in

the severity of these symptoms was not sustained such that they could be considered

resolved.

The vomiting, for example, though noted in February 2021 medical records as

resolved, *see* ECF No. 15-1 at 368, 379, reportedly still returned once or twice a month

accordingly to March 2022 records, *see* ECF No. 15-3 at 2317.  Similarly, the complete

record indicates that her nausea and diarrhea showed only intermittent improvement.

*Compare* ECF No. 15-1 at 781 (showing nausea had abated in January 2021) *with id.* at

368 (showing continued diarrhea in early February 2021); *but see id.* at 939 (showing

improvement in diarrhea a week later).  *See also id.* at 414 (showing inconsistent stool in

June 2021) and 719 (showing no improvement of her gastrointestinal symptoms); ECF

No. 15-2 at 1311 (presenting at the emergency room in November 2021 due to nausea

all day); ECF No. 15-3 at 2317 (reporting nausea daily in March 2022).  Plaintiff also

continued to report constant abdominal pain, even to the point of presenting at the emergency room, despite experiencing some improvement on that point with medication. *See id.* at 414 (reporting some improvement of pain in June 2021) and 890 (reporting a high level of pain); ECF No. 15-2 at 1697 (reporting to the emergency department for diffuse abdominal pain and nausea in February 2022); ECF No. 15-3 at 2317 (reporting pain every day in March 2022).   She even reported chest pain, which one doctor concluded was very likely related to acid reflux.  ECF No. 15-2 at 1931.  And while the ALJ noted that none of these symptoms kept Plaintiff in the hospital overnight, Plaintiff testified that she chose to be discharged instead of staying overnight any of the times she went to the emergency room because she was told that there was little the emergency department could do for her.  ECF No. 15-1 at 45.  Thus, the court finds that the ALJ's conclusions as to the resolution of Plaintiff's gastrointestinal symptoms do not reflect the complete record.

Relatedly, the court finds that the ALJ failed to account for the collateral consequences of Plaintiff's symptoms in arriving at her RFC.  Consequential to her gastric difficulties, Plaintiff consistently has reported that she also has difficulty sleeping and that she frequently needs quick access to a toilet, where she may be detained for a lengthy period.   The ALJ's conclusions regarding Plaintiff's RFC also does not reflect these limitations, or adequately explain why they were omitted.  Remand is appropriate to clarify these points as well.

10

### 3. *Mental Impairments*

Plaintiff also argues that the ALJ erred in failing to secure medical source statements from her mental health treatment providers. She asserts that the ALJ's conclusions with respect to her psychological limitations were completely fabricated.

The court disagrees. While no medical source statements from Plaintiff's mental health treatment providers were solicited, those providers' records and notes, going back several years even before the alleged onset date, were a part of the administrative record. Thus, contrary to Plaintiff's assertion, there was a complete record as to those conditions, and the ALJ did have competent medical evidence upon which to make his findings with respect to Plaintiff's mental limitations. The ALJ thoughtfully considered Plaintiff's diagnosed mental health conditions and prior assessments of the same, concluding that they warranted some limitations in her RFC, even where such conclusion ran contrary to prior administrative findings. ECF No. 15-1 at 26. Accordingly, the court finds that the ALJ committed no error in failing to seek additional medical source statements.

### 4. *Discrediting Physical Capacity Statement*

Finally, Plaintiff argues that the ALJ improperly discredited the physical capacity statement provided by her treating physician. That statement asserted that Plaintiff's limitations are far more severe than the ALJ concluded. It was stated therein that Plaintiff could not walk one block without pain or fatigue, that she could only stand for ten minutes at a time, and that she would have to lie down for six hours in every eight-hour work day. ECF No. 15-3 at 2036–37. But this is not consistent even with Plaintiff's own testimony, wherein she asserted she could walk for an hour and stand for thirty minutes at a time. ECF No. 15-1 at 62. The statement therefore clearly is inconsistent with the nonmedical

evidence presented at Plaintiff's hearing.  The ALJ declined to rely upon the statement because it was unsupported by the objective medical evidence, which tended to indicate milder abnormalities.  Thus, the court finds that the rejection of the statement satisfied the relevant test for persuasiveness.  *Blanford v. Dudek*, No. 24-2097-CV, 2025 WL 1288082, at *1 (2d Cir. May 5, 2025) (describing the standards for consistency and supportability when determining the persuasiveness of a medical source statement).

IV.    **CONCLUSION**

For the reasons discussed herein, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Reverse the Decision of the Commissioner, ECF No. 17, is **GRANTED in part.**  The court remands this matter to the Commissioner for further review and explication as to Plaintiff's satisfaction of Listing 5.08, and as to the severity and pervasiveness of her gastrointestinal symptoms and the effect of the same upon her RFC.

2. The Motion to Affirm the Decision of the Commissioner, ECF No. 22, is **DENIED.**

3. The court respectfully requests that the Clerk of Court enter judgment in Plaintiff's favor consistent with this ruling and **CLOSE** this case.

   **IT IS SO ORDERED** at Hartford, Connecticut, this 1st day of June, 2026.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE
